AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>07/16/2021<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___DM___ DEPUTY | UNITED STATES DISTRICT COURT<br>for the<br>Central District of California | FILED<br>CLERK, U.S. DISTRICT COURT<br>July 16, 2021<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___IM___ DEPUTY |
|---|---|---|

United States of America

v.

MICHAEL CHRISTOPHER ARMENDARIZ,

Defendant(s)

Case No. 2:21-mj-03347

# CRIMINAL COMPLAINT BY TELEPHONE
# OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 15, 2021, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Nicole Lozano
Complainant's signature

Nicole Lozano, Special Agent, ATF
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 b_ tele_hone.

Date: July 16, 2021

*Patricia Donahue*
Judge's signature

City and state: Los Angeles, California

Hon. Patricia Donahue, U.S. Magistrate Judge
Printed name and title

AUSA Sara Milstein (x8611)

**AFFIDAVIT**

I, Nicole Lozano, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against MICHAEL CHRISTOPHER ARMENDARIZ ("ARMENDARIZ") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.

2. This affidavit is also made in support of an application for a warrant to search the following digital devices (collectively, the "SUBJECT DEVICES"), in the custody of the Burbank Police Department ("BPD"), in Burbank, California, as described more fully in Attachment A:

    a. One white Apple iPhone X, BPD evidence bar code number 100371716 ("SUBJECT DEVICE 1"); and

    b. One pink Apple iPhone, BPD evidence bar code number 100371766 ("SUBJECT DEVICE 2").

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy and attempt to distribute controlled substances); 18 U.S.C. §§ 922(g) (prohibited person in possession of a firearm); and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) (the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4.      The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5.      I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed since November of 2012.  I am currently assigned to Los Angeles Group I Field Office.  I have received approximately 28 weeks of training at both the Federal Law Enforcement Training Center and the ATF National Academy in Glynco, Georgia, and numerous hours of post-academy training in firearm laws and regulations.

6.      My primary duties include the enforcement of federal firearms and explosives laws.  I have participated in investigations involving the possession of firearms by prohibited persons, the possession of illegal firearms, and the illegal acquisition of firearms by both prohibited and non-prohibited persons.  I have personally participated in the preparation and execution of search warrants involving various violations of federal and state laws.  As a result of my

training and experience as an ATF Special Agent, I am familiar with both federal and state criminal laws, including firearms laws.

### III. SUMMARY OF PROBABLE CAUSE

7.  On July 15, 2021, investigators with ATF and the Burbank Police Department ("BPD") detained ARMENDARIZ and seized the SUBJECT DEVICES from his person and from his car. Law enforcement then executed a state search warrant on ARMENDARIZ's house, recovering two firearms, ammunition, and suspected methamphetamine, heroin, and cocaine from ARMENDARIZ's bedroom. ARMENDARIZ, who has previously been convicted of at least three felony crimes, is prohibited from possessing firearms or ammunition.

### IV. STATEMENT OF PROBABLE CAUSE

8.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   Background**

9.  On July 15, 2021, I was present when members of the ATF and the BPD executed a state search warrant on ARMENDARIZ's residence. The non-sealed portion of the warrant is attached hereto as Exhibit 1, and is incorporated herein by reference.[1]

As provided in Exhibit 1, law enforcement previously searched

10.  ARMENDARIZ's residence on May 1, 2021, and found non-

---

[1] Exhibit 1 also attaches and incorporates by reference another signed and executed state search warrant as an exhibit — Exhibit A. Exhibit A is also incorporated herein by reference.

user amounts of methamphetamine, heroin, and cocaine, a digital scale with white residue on it, and thousands of dollars in cash. They also seized ARMENDARIZ's cell phone (different from either of the SUBJECT DEVICES). Upon searching the cell phone, they found that ARMENDARIZ used it to take photographs of himself holding guns and to discuss with others the purchase, sale, and storage of firearms.

      **B.    Law Enforcement Finds Guns and Suspected Drugs Inside of ARMENDARIZ's Residence**

    11.  Based on my conversations with BPD detectives, I know that, on July 15, 2021, BPD conducted a traffic stop of ARMENDARIZ. ARMENDARIZ was the sole occupant of the car in which he was stopped, and ARMENDARIZ is the registered owner of the car in which he was stopped. At the time, ARMENDARIZ had SUBJECT DEVICE 1 on his person and SUBJECT DEVICE 2 in the center console of his car.

    12.  I was present during the execution of the state search warrant of ARMENDAIRZ's residence on July 15, 2021, and I observed the following:

        a.  In one of the residence's bedrooms, I saw men's clothing and shoes appearing to belong to a person of ARMENDARIZ's size and stature, a photograph of the person I recognized as ARMENDARIZ with a child, and a car-related bill in ARMENDARIZ's name, among other items. I therefore believe this room belongs to ARMENDARIZ.

        b.  In the bedroom described in paragraph 11.a, believed to be ARMENDARIZ's bedroom, law enforcement discovered

a hideaway shelf containing a secret compartment in which agents found the following:

      i.   Two loaded firearms, including a semi-automatic firearm and a revolver;

      ii.   One baggie of approximately 81.5 grams of a glass-like substance resembling methamphetamine; and

      iii.   A baggie containing approximately 139.5 grams of a glass-like substance resembling methamphetamine;

   c.   In a container in ARMENDARIZ's bedroom, law enforcement found the following:

      i.   A baggie of a white powdery substance resembling cocaine; and

      ii.   A baggie of a brown substance resembling black tar heroin.

   d.   On a table next to the closet in ARMENDARIZ's bedroom, law enforcement found five 9mm rounds of ammunition.

   **C.**   **ARMENDARIZ's Statements**

13.   At the BPD station on July 15, 2021, I read ARMENDARIZ his Miranda rights and was present when he agreed in writing to waive them.  I was present when ARMENDARIZ said the following, in substance and in part:

   a.   ARMENDARIZ initially denied knowledge of any drugs in his residence, but ARMENDARIZ acknowledged that he knowingly possessed methamphetamine, heroin, and cocaine;

   b.   ARMENDARIZ initially denied possessing guns, but later admitted to knowingly possessing firearms;

    c. ARMENDARIZ initially denied but then ultimately acknowledged that the bedroom described above in paragraph 11.a containing his clothing, photograph, and bill was his bedroom;

    d. ARMENDARIZ said that he rented some rooms in his residence to others but that he had not had any tenants in the residence since at least mid-June 2021.

    e. When I asked ARMENDARIZ for consent to search the two digital devices seized from him, he acknowledged that SUBJECT DEVICE 2, found in the console of his car, was his "old phone," and SUBJECT DEVICE 1, found on his person, also belonged to him. ARMENDARIZ declined to provide consent to search.

  **D. Criminal History**

  14. From my review of criminal history records for ARMENDARIZ, I believe that ARMENDARIZ has previously been convicted of at least the following felony crimes punishable by a term of imprisonment exceeding one year:

  15. On or about February 6, 2013, a violation of California Health & Safety Code sections 11378: Possession of a Controlled Substance for Sale, and 11375(b)(1): Possession of Controlled Substance for Sale, in the Superior Court for the State of California, County of Los Angeles, Case Number BURGA08688501;

  16. On or about February 27, 2013, a violation of California Health & Safety Code section 11378: Possession of a Controlled Substance for Sale, in the Superior Court for the State of California, County of Los Angeles, Case Number AN5894; and

17. On or about September 19, 2016, a violation of California Health & Safety Code section 11378: Possession of a Controlled Substance for Sale, in the Superior Court for the State of California, County of Los Angeles, Case Number BURGA09878101.

### E. Suspected Controlled Substances

18. The suspected methamphetamine, heroin, and cocaine were not field tested because of current ATF guidance prohibiting field testing. Based on my understanding, this guidance exists because drugs are frequently mixed with fentanyl, a substance that I know in my training and experience is dangerous to touch and can cause grievous bodily harm if touched.

19. I believe the substances recovered from ARMENDARIZ's bedroom are methamphetamine, cocaine, and heroin because I have encountered these substances on numerous occasions, and my previous suspicions about the nature of those drugs have been confirmed by laboratory analysis.

20. I also know from my training and experience that drug traffickers and those who conspire with others to possess and distribute drugs frequently store their drugs in secret compartments, often in their homes or vehicles. I also know that drug traffickers often possess and use those secret compartments for the primary purpose of hiding contraband, including controlled substances. I therefore believe that the existence of the secret compartment in what I believe was ARMENDARIZ's bedroom is further evidence that the substances

7

recovered from inside of the compartment were, in fact, controlled substances.

21. I also believe that the substances found in ARMENDARIZ's bedroom are heroin, cocaine, and methamphetamine because ARMENDARIZ admitted that he knowingly possessed those drugs.

## V. TRAINING AND EXPERIENCE ON DRUG OFFENSES

22. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

   a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

   b. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

   c. Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications,

8

sent to and from cell phones and other digital devices. This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

       d.   Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

       e.   Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VI. TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

23. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

       a.   Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical

control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices.

       b.   Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

       c.   Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale.  In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

    d. Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VII. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

24. As used herein, the term "digital device" includes the SUBJECT DEVICES.

25. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

    a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

    b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That

evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

        c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

        d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    26.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

        a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus,

often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

        b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

27. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

//
//
//

## VIII. CONCLUSION

28. For all of the reasons described above, there is probable cause to believe that ARMENDARIZ has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm. There is also probable cause that the items to be seized described in Attachment B, namely, evidence of the SUBJECT OFFENSES, will be found in a search of the SUBJECT DEVICES described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 16th day of
July, 2021.

*Patricia Donahue*

HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE